## CORA CLARK ET AL. v. WOODS NATIONAL BANK.

### Decided October 21, 1908.

**1.—Life Insurance—Assignment of Policy—Widow's Allowance.**

Where a debtor during his lifetime places a policy of insurance upon his life in the hands of a creditor as collateral security for his debt, the creditor is entitled to the proceeds of the policy, to the extent of the indebtedness, as against the claim of widow and children for a yearly allowance and an allowance in lieu of a homestead.

**2.—Same—Form of Assignment.**

When a transfer or assignment of a policy of insurance is not in the form prescribed by the company, only the insurance company can object to the informality.

Error from the Fifty-seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*A. C. Bullitt* and *V. M. Clark,* for plaintiff in error.

*W. P. Lobban* and *Cobbs & Cobbs,* for defendant in error.

FLY, ASSOCIATE JUSTICE.—Cora Patrick, as the duly qualified survivor of the community estate of herself and her deceased husband, Lee Patrick, instituted this suit against the Southwestern Life Insurance Company to recover five thousand dollars insurance on the life of said Lee Patrick. The Woods National Bank had in a separate suit sought to recover the same insurance from the insurance company, alleging that the same had been transferred to it by Lee Patrick, and at the instance of the insurance company the two causes were consolidated, and it prayed that the question of ownership of the money be established by the court so that it would be protected in the payment of the same.   Through their next friend and attorney, A. C. Bullitt, Whitney Patrick, Cora Patrick and Dulcie Patrick, minor children of Cora Patrick and Lee Patrick, intervened in the suit, claiming an interest in the insurance money, which had been paid by the Southwestern Insurance Company into the registry of the court.   For further statement we refer to the opinion in

case of Insurance Co. v. Woods National Bank, 107 S. W., 114, which was an appeal from the same judgment from which this writ of error is prosecuted. The case was submitted on special issues, and the judgment rendered is thus described in that opinion: "Upon those answers the court rendered judgment that neither ·appellant, Mrs. Patrick, nor the minors should recover anything; that appellant recover all costs incurred by reason of the suit of Mrs. Patrick and the intervention of the minors, and that the Woods National Bank recover of appellant the sum of $5,000, the principal amount of the policy; the sum of $245, interest at six percent·per annum from January 5, 1906, until October 29, 1906; $600, the statutory penalty for refusal to pay the loss, and $500 attorney's fees, the whole being $6,345. It was also provided in the judgment that the clerk should pay the $5,000, paid into the registry of the court by appellant, to Woods National Bank, upon the execution of a bond by said bank in the sum of $6,000, payable to the district judge, or his successors, conditioned that the bank would repay the money with interest to the successful party in the suit. This writ of error is prosecuted by Cora Patrick, who became Cora Clark by intermarriage with V. M. Clark after the judgment was rendered. The minors did not join in the petition for writ of error, and they are in this court, together with Woods National Bank and the insurance company, as defendants in error.

The evidence justifies the conclusions that· Lee Patrick, whose life was insured for $5,000 by the Southwestern Life Insurance Company, placed his policy of insurance in the hands of the Woods National Bank ·as collateral security for a debt greatly in excess thereof that he owed to the bank, and the policy was in the hands of the bank at the time that Lee Patrick died, and he was at that time indebted to the bank in the sum of $13,000. The form prescribed in the policy for its assignment was not complied with, but the facts showed, and the jury found, that the insurance company had recognized the assignment, and had waived the formal mode of assignment.

There is practically but one point to be decided in this case, and that is,.Is the claim of plaintiff in error, for a yearly allowance for herself and children, and in lieu of a homestead, superior to the claim of the bank on the policy which had been placed in· its possession by Lee· Patrick to secure the payment of a debt due by him to the bank? In connection with that issue it may be stated that it was shown beyond controversy that the policy was delivered by Lee Patrick to the bank, to be held as security for a debt, and was in its possession at· ·the time of Patrick's death. Mrs. Patrick admitted these facts, while acting as survivor, both orally and in writing.

The issue presented has been time and again decided adversely to the claim of plaintiffs in error by the Appellate Courts of Texas, which a brief review of the decisions will clearly demonstrate.·

In the case of Huyler v. Dahoney, 48 Texas, 234, the administrator sued to recover certain promissory notes left with the defendant as collateral security by the decedent for a debt owed by him to the defendant. The Supreme Court said: "When such negotiable instruments· are deposited as collateral security for a debt, the creditor is not a mere mortgagee or lienholder, who, in case of the death of his debtor, must prove up his claim against the estate and ask the aid of the Probate Court·to

enforce his lien. He has, in his own hands, the means of paying himself, and may, at any time after his debt is due, collect the collaterals, and appropriate the proceeds to such payment." That decision was reiterated in the case of Williams v. Lumpkin, 74 Texas, 601.

In the case of Andrews v. Union Cent. Life Ins. Co., 92 Texas, 584, it appeared that the Union Central Life Insurance Company had issued a policy on the life of W. L. Andrews for the sum of $5,000. He died, and the insurance company paid the amount due on this policy to one A. P. Dyke. The court said: "The plaintiff claims that if Dyke was in fact a creditor of the deceased to the extent of the amount named in the policy, then she is entitled to recover, because the estate was insolvent, and there was no homestead or other exempted property which the court could set apart to the widow and minor children, and no property or funds out of which they could be furnished a year's support, and that the order of the Probate Court setting apart the fund to be derived from the collection of this policy to the widow and children gives a prior claim to that of the creditor. The petition alleges that Dyke, if a creditor at all, held the policy as collateral security for his debt. If it be agreed that the policy was in Dyke's hands as collateral to secure the indebtedness to him, then he had the right to collect it and apply the proceeds to the payment of his debt, and his claim was superior to that of the plaintiff and her children." The Supreme Court reversed the judgment, and on another appeal to the Court of Civil Appeals, in affirming the judgment of the lower court, it was said: "Dyke is shown to be the absolute owner of the policy, and it was not necessary to his recovery to show any assignment of it to him." 24 Texas Civ. App. 425.

In the case of Fulton v. National Bank of Denison, 26 Texas Civ. App., 115, decided by this court, the deceased had placed with the bank certain corporate shares to secure an indebtedness due by him. Some of the shares had been paid for by the bank, for the benefit of deceased, but there were others for which it did not appear that the bank had advanced the purchase price. Mrs. Fulton, the widow of deceased, sought to have the stock set apart as an allowance for her and her children. This court held that, as to all the shares except eight, the bank had a vendor's lien which would be superior to a claim for an allowance, and as to the other shares, not paid for by the bank, this court said: "The statute does not authorize an administrator to assume or recover possession of property which the decedent had disposed of and was himself not entitled to. Fulton had neither possession of any of this property nor was entitled to its possession at his death. He had a right to acquire or regain possession of it by satisfying the creditor who held it, and his administrator has no better right." The same rule fits the facts of this case to a nicety.

The court, however, went farther in that case, and held: "But, independently of the reasons stated in the above paragraph, the expressed views of the Supreme Court are not in accord with plaintiff's contention that these pledged stocks were subject primarily to the payment of allowances to widow and children." After a quotation from Andrews v. Insurance Company, herein cited, the court proceeded: "We are of the opinion that a pledgee of certificates of stock is entitled to hold them as against an administrator of the pledgor, and is entitled to receive and

enforce dividends or other benefits attaching thereto so long as his claim is unsatisfied."

The policy was pledged to Woods National Bank to secure a debt he owed the bank, and he could not have recovered possession of the policy without payment of the debt for which it was pledged, and neither can his wife and children.

The insurance company having waived the requirements in the policy as to its assignment, no one else had the right to attack the form of the transfer. Coleman v. Anderson, 98 Texas, 570; Embry v. Harris (Ky.), 52 S. W., 958; Lockett v. Lockett (Ky.), 80 S. W., 1152; Opitz v. Karel (Wis.), 95 N. W., 948, 62 L. R. A., 982; McCauley v. Central Nat'l Bank, 3 S. E., 193.

It has also been held that where a debtor made an assignment of a policy upon his life as collateral security for his debt, the assignee does not waive his rights in the policy by reason of having procured an allowance of his claim against the estate. Hight v. Taylor, 97 Ind. 392.

The judgment, as reformed in our opinion on the other branch of this case, will be affirmed.

*Affirmed.*

Writ of error refused.